UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

United States Courts
Southern District of Texas
FILED

JUN 07 2011

David J. Bradley, Clerk of Court

UNITED STATES OF AMERICA

v.   Criminal Action No. 2:11-CR-00534

NOKA SHIPPING COMPANY, LIMITED

### MOTION OF UNITED STATES FOR AWARD PURSUANT TO 33 U.S.C. § 1908(a)

Pursuant to the Act to Prevent Pollution from Ships, 33 U.S.C. § 1908(a), ("APPS"), the United States of America ("United States) files this Motion and hereby moves this Court to order a total award of $250,000, which is one-half of the criminal fine to be paid by defendant NOKA SHIPPING COMPANY, LIMITED (hereinafter "NOKA") for Count One of the Indictment, and that it to be paid to Vitaliy Vorchak, whose assistance led to the successful prosecution of the case. The United States requests that the ruling on this motion be reserved until this Court accepts NOKA's plea to the Indictment and is sentenced. In support of its motion, the United States submits the following:

I.   **NOKA's Fine and the Court's Award Authority**

On June 7, 2011, it is anticipated that defendant NOKA will plead guilty to a two-count indictment. Count One of the Indictment charges a violation of the APPS, 33 U.S.C. § 1908(a). Specifically, as set forth in Count One, from on or about June 15, 2010, NOKA knowingly failed to maintain an Oil Record Book ("ORB") for the M/V Florin in which all operations involving the movement of oil, including all overboard discharges



of oily waste, were fully recorded.  On June 7, 2010, this Court is set to hear NOKA's plea and sentencing, and pursuant to the Plea Agreement the parties will recommend that this Court impose a total monetary penalty on the defendant of $900,000 ($750,000 as a criminal fine and $150,000 as a community service payment).  Of the criminal fine, $500,000 will be attributable to the APPS count (Count One).

APPS is designed to implement an international treaty known as the MARPOL protocol[1], which sets forth international standards designed and intended to protect the marine environment.  In order to further this purpose, APPS grants the Court the discretionary authority to issue a monetary award of up to one-half of any criminal fine imposed on a defendant to those individuals who provide information that leads to a conviction under the Act.[2]  Specifically, Section 1908(a) of APPS provides that:

---

[1] The MARPOL Protocol ("MARPOL") is an international treaty that sets forth the international standards for the maximum concentration of oil in water permitted to be discharged overboard from vessels.  This standard is 15 parts per million ("ppm") of oil.  MARPOL Annex I, Reg. 9.  MARPOL requires vessels to have and maintain an oil sensing device, such as that which would be found on an Oily Water Separator, to prevent the discharge of a mixture containing more than 15 ppm of oil.  MARPOL Annex I, Reg. 16.  When such a sensor detects more than 15 ppm of oil, it redirects the effluent to a storage tank on board a vessel.  The purpose of an Oil Water Separator is to treat oily waste water by separating the oil from the water.  MARPOL was implemented in the United States by APPS, 33 U.S.C. § 1901 et seq.  With regard to foreign vessels such as the M/V Florin, the APPS regulations governing oil pollution and Oil Record Books provide jurisdiction only when these vessels are operating in the navigable waters of the United States (within 12 navigable miles) or while at a port or terminal under the jurisdiction of the United States.  33 C.F.R. § 151.09.  The APPS regulations require that each non-tanker vessel of more than 400 gross tons maintain a record known as an Oil Record Book.  In this Oil Record Book, transfers of oil, the disposal of sludge and waste oil, and overboard discharges of bilge water that have accumulated in machinery spaces, and thus are contaminated with oil, must be fully and accurately recorded by the person in charge of the operations.  33 C.F.R. § 151.25(d).  The Oil Record Book must also record any emergency, accidental, or other exceptional discharges of oil or mixtures.  33 C.F.R. § 151.25(g).

[2]  The regulations implementing APPS contain the same provision.  33 C.F.R. § 151.04(c).  The Rivers and Harbors Act contains a similar award provision.  33 U.S.C. § 411.

> A person who knowingly violates the MARPOL Protocol, this chapter, or the regulations issued there under commits a class D felony. In the discretion of the Court, an amount equal to not more than ½ of such fine may be paid to the person giving information leading to conviction.

33 U.S.C. § 1908(a).

The APPS award provision serves a valuable law enforcement purpose by encouraging those most likely to know of the illegal conduct to report it and be forthright with information about illegal conduct. Deliberate violations of MARPOL and United States law are far too common. Criminal conduct that takes place within the small community of those living and working aboard vessels is difficult to detect. The availability of the APPS award aptly reflects the realities of life at sea and the pollution of the oceans. Because the discharge of oily waste from commercial vessels like the M/V Florin typically takes place in the middle of the ocean in international waters, and often at night, the only persons likely to know about the conduct and the falsification of the ORB are crewmembers. Absent crewmembers with first hand knowledge of the illegal conduct coming forward, APPS violations are otherwise extremely difficult to uncover. The government's success in detecting this illegal activity and obtaining sufficient evidence to support investigations and prosecutions is dependent upon the willingness of crewmembers to step forward and tell the truth about events that took place while the ships was at sea. In turn, a crew member must assess the risks associated with coming forward, such as the possibility that the crewmember will lose relatively lucrative employment and be blacklisted and barred from working in the marine shipping industry in the future. A substantial monetary award, as provided by

APPS, both rewards crewmembers for taking those risks and provides an incentive for other crewmembers to come forward and report illegal conduct on vessels in the future.

## II. The Assistance Provided by Vitaliy Vorchak

Crew member Vitaliy Vorchak came forward to provide information to the United States Coast Guard that some members of the engineering crew on the *M/V Florin* were engaged in discharging oily waste directly into the sea without first being processed through mandatory pollution prevention equipment as required. On September 27, 2010, during a routine Coast Guard inspection in Corpus Christi, Texas, Mr. Vorchak alone approached a Coast Guard inspector stating that "the ship was bad" and that "at night everything goes overboard." Additionally, he led the Coast Guard to the location of a valve in the engine room which was part of the vessel's fire main system (a valve one would connect a fire hose to similar to a fire hydrant to fight fires) that contained oily water. Mr. Vorchak provided the Coast Guard inspectors with information about how the fire pump and fixed piping onboard the vessel had been used to discharge oily waste without using the appropriate pollution prevention equipment. He drew a diagram depicting the piping and pumps used by of the vessel to discharge oily waste. The information provided by Mr. Vorchak was subsequently corroborated by physical and documentary evidence discovered by the Coast Guard. However, without the information provided by Mr. Vorchak, this activity likely would not have been discovered, as Coast Guard inspectors would not typically inspect that specific part of the fire main system. No other crewmembers came forward and all denied the discharges took place.

Following the September 27, 2010 port call, Mr. Vorchak was requested to and

agreed to remain in the United States in order to assist with the investigation. He remained in Corpus Christi as requested until November 30, 2010. During that time, he participated in multiple interviews with government representatives during which he detailed the APPS violations that occurred on board the *M/V Florin*. During this time he also suffered stress and anxiety related to the events on board the ship and subsequent investigation and was treated by a physician for those conditions. Mr. Vorchak has expressed concern that he will face the prospect of being black-listed in the maritime shipping industry as a result of his cooperation with the United States in this case.

Absent the detailed and specific information provided by Mr. Vorchak it is unlikely that the Coast Guard would have uncovered the illegal conduct aboard the *M/V Florin*. An award would be consistent with the valuable law enforcement purpose of APPS to encourage those with information about unlawful conduct to come forward and disclose that information to authorities, information that would otherwise be difficult, if not impossible, to obtain. Given the valuable and significant nature of the information provided by him, the United States recommends that an award of $250,000 be issued to Vitaliy Vorchak.

### III. The History of Awards

As set forth below, there have been many other cases in which an award has been issued pursuant to 33 U.S.C. § 1908(a):

- United States v. Ionia Management, S.A.., No. 3:07cr134 (JBA) (D. Conn. April 8, 2011): award $550,000, $350,000 and $350,000 to three crewmembers who petitioned for awards and awards of $75,000, $25,000, $25,000 and $25,000 for non-moving crewmembers.

- United States v. Aksay Denizcilik Ve Ticaret A.S., No. 8:10-Cr-116-T-26TGW (M.D. Fla. April 2010): award of $125,000 each to the Ship's two motorman.

- United States v. Hiong Guan Navegacion Japan Co., Ltd., No. 8:08-CR-494 (M.D. Fla. April 14, 2009): award of $253,125 to the Ship's Fourth Engineer and $84,375 to the Ship's Third Engineer.

- United States v. General Maritime Management (Portugal), L.D.S., No. 2:08CR00393-001 (S.D. TX. April 7, 2009): $250,000 divided proportionately between 5 crewmembers.

- United States v. Kassian Maritime Navigation Agency Ltd. et al., No. 3:07-CR-00048 (M.D. Fla. August, 16, 2007): award of $230,000 each to the Ship's Wiper and Cook and $20,000 to two Third Engineers.

- United States v. Sun Ace Shipping Company et al., No. 2:06-CR-00599 (D.N.J. December 2006): award of $200,000 split evenly among three engine room crewmembers.

- United States v. MK Shipmanagement Co., Ltd., Criminal Docket No. 2:06-cr-00307-WHW (D.N.J., Aug 7, 2006): award of one half of the $200,000 fine to two crewmembers.

- United States v. Wallenius Ship Management PTE. Ltd, Criminal Docket No. 2:06-cr-00213-JAG-ALL (D.N.J., Aug. 3, 2006): award of one half of the $5 million fine to four crewmembers.

- United States v. OMI Corporation, Criminal Docket No. 2:04-cr-00060-KSH-ALL (D.N.J., Aug. 6, 2004): award of one half of the $4.2 million fine to a crewmember.

## IV. Conclusion

This Court has discretion to award an amount up to one-half of the criminal fine imposed in connection with Count One of the Indictment to Vitaliy Vorchak, who provided critical evidence leading to the defendant's conviction. In light of the information provided by the witness, the United States respectfully moves this Court to find that an award in this matter would be consistent with the law enforcement purpose of the statute by encouraging those with information to come forward and disclose that

information to appropriate authorities. The United States therefore respectfully requests that the Court award $250,000 to Vitaliy Vorchak in recognition of his contribution to the successful prosecution of this matter.

Respectfully Submitted,

JOSE ANGEL MORENO
United States Attorney
Southern District of Texas

By:   //s// Jeffery S. Miller
      JEFFREY S. MILLER
      Assistant U.S. Attorney


IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resource Division
U.S. Department of Justice

By:   //s// David E. O'Connell
      DAVID E. O'CONNELL
      Trial Attorney
      Environmental Crimes Section
      U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Daniel A. Tadros, Esquire

/s/ Jeffrey S. Miller
JEFFREY S. MILLER
Assistant United States Attorney